WILLIAM L. FRAME, Plaintiff, *v.* TRENTON MILK & CREAM Co., INC., Defendant.

County Court, Oneida County, May 19, 1925.

Corporations — dividends — action to recover declared dividend — corporation was organized to handle, ship and sell milk produced by stockholders — counterclaim based on refusal of plaintiff to deliver milk, which, under contract, rendered plaintiff liable — evidence shows that defendant refused to accept plaintiff's milk — defendant failed to sustain burden of justifying refusal under contract — defendant cannot recover on counterclaim.

In an action to recover a declared dividend, in which it appears that the corporation was organized to handle, ship and sell milk produced by the stockholders, the defendant cannot recover on a counterclaim based on the contract between the plaintiff and the defendant, which made the plaintiff liable, at the rate of

two dollars per cow per year, for refusal to deliver milk; where it appears that the defendant rejected plaintiff's milk and failed on the trial to sustain the burden of showing that this rejection was justified under the contract.

ACTION by stockholder to recover dividend claimed to be due.

*Lewis, Pratt & Fowler,* for the plaintiff.

*Fuller, Brown & Hubbard,* for the defendant.

HAZARD, J.:

The defendant is a corporation and the plaintiff is a stockholder holding three shares of defendant's stock. On or about April 2, 1924, defendant declared a dividend of twenty per cent. This action was brought to recover the amount of the dividend claimed to be due to the plaintiff, amounting to thirty dollars, and also the sum of ten dollars due to another stockholder, one Roberts, and ten dollars due to a third stockholder, one Perry, the latter two claims having been assigned to the plaintiff. The declaring of the dividend is admitted by the defendant, but it sets up as a counterclaim an alleged breach of contract on the part of the plaintiff and his assignors in an amount which is ninety dollars in excess of the plaintiff's claim, and demands an affirmative judgment against the plaintiff therefor. The contract in question upon which this counterclaim is made was entered into in February, 1904, between certain milk producers living in the vicinity of the village of Trenton, in and by which they agreed to form the defendant corporation and to subscribe respectively for its capital stock. The stated purpose of the corporation was " to handle, ship, sell, manufacture, or otherwise utilize the milk produced by the stockholders of the corporation; for the mutual benefit and advantage, and to presently or later as may seem best, build, equip or acquire a suitable place, plant or station at Trenton, N. Y., for handling, manufacturing, shipping or otherwise utilizing the milk of the stockholders." The contract further provided that " for the purpose of providing an income for the corporation to pay dividends and expenses, it is agreed between the subscribers and with and for the benefit of said corporation when formed, that one cent per 100 pounds of milk shall be paid or retained as to the milk delivered by the stockholders and handled by or through the said corporation if the business is carried on simply as a shipping business." The contract further provided that the signers should deliver such milk as they produced at said station, with certain reservations, and, further, each agreed that " in case of failure to deliver milk as above provided, that he will pay the said corporation to be formed, at the rate of $2 per cow for each year, as long as said failure or refusals do continue." It is alleged by

the defendant as a basis for defendant's counterclaim that the plaintiff stopped delivering milk to defendant in April, 1922; that the assignors, Roberts and Perry, also stopped delivering milk prior to the commencement of this action; and a counterclaim is founded upon the claimed breach of contract on the part of the plaintiff and his assignors. That such a claim is legal, if established, cannot, I think, admit of doubt. At least it has been so decided in several actions brought to recover on a similar basis, among them *Bullville Milk Producers Association, Inc.,* v. *Armstrong* (108 Misc. 582) and *Holland Patent Milk & Cream Co.* v. *Rowland* (not reported). The latter case was tried in Utica in January, 1910, before Mr. Justice DEANGELIS, and at the close of the trial he directed a verdict for the plaintiff. This case was taken to the Appellate Division and the decision affirmed (140 App. Div. 921). The case at bar, however, presents a different state of facts from the two above quoted in this respect, viz., that as appears from the evidence in this case the defendant had refused to take plaintiff's milk. The ground or reason for this refusal is not made very clear by the evidence, but it did appear that in April, 1922, plaintiff having up to that time been delivering milk regularly to the defendant's station, sent his milk there one morning, by the witness Wier, and that the man in charge refused to take it and said it would be rejected until further inspection. The " inspection " referred to was of the plaintiff's barns and buildings. Nothing in the evidence very directly showed what the nature of the complaint or fault was, but it more or less clearly appeared that the station owned by the defendant corporation was leased to and operated at the time by the Dairymen's League; and the milk received there was intended for shipment to New York city; and more or less inferentially it appears that something about the barns or buildings of the defendant did not meet with the requirements of some " inspector " who might have been a Dairymen's League official, or possibly, a New York city official.

We are thus brought to the question of whether the situation as outlined by the rather meagre evidence in the case, justifies the conclusion that the plaintiff has breached his contract with the defendant corporation. He expressed upon the stand a willingness to have continued delivering his milk providing they would accept it; and he stated that he had applied for a reinspection, but none had ever been made. He also said that he had not been informed of any required changes in his barn, and that the inspector had given him no instructions. The question as to whether or not under the facts brought out in the evidence, as outlined above, a finding is justified that the plaintiff had breached his contract, is not

without its difficulties.   The contract does not undertake to specify any quality or grade of milk to be produced or delivered, nor does it provide for any inspections or any criterion of cleanliness of dairy or stables.   I assume the contract must be interpreted to involve a reasonable and fair compliance on both sides.   On the one hand, although the contract does not say so, I assume it should be held to require the plaintiff to deliver milk that was clean and wholesome, and from a healthy dairy.   On the other hand, I assume that the defendant is not to be construed to have any unreasonable or arbitrary or capricious powers of making burdensome rules and regulations.   For instance, the contract nowhere provides that the milk to be produced and delivered by the plaintiff should be produced under conditions agreeable to the New York city board of health.   That such a provision can be read into it, I doubt. The defendant claims to have established its counterclaim by simply proving the failure of the plaintiff to deliver his milk after a certain date.   It is chargeable with the burden of proof in establishing its counterclaim, and in view of its refusal to accept the plaintiff's milk I am compelled to decide that it has not met that burden of proof.   Conceding upon the trial, or at least not denying, that it had refused to take any more milk from the plaintiff, it should have, I believe, gone further than that and justified this refusal by some evidence going to show that the refusal was fairly justified.   It may have been that the plaintiff was justified in refusing to meet the new requirements.   They may have been burdensome.   I cannot without knowing what they were decide that they were reasonable or fair or within the reasonable terms of the contract in question; and I must, therefore, decide that this was a failure of proof on the part of the defendant to establish its alleged counterclaim as to the plaintiff.   The reason for making this decision is illustrated by the evidence in connection with the assigned claim of Roberts who testified that he was told by the president of the defendant corporation that " he had to either sign the pool contract or take cheese prices for my milk.   It was a Dairymen's League contract.   I was not willing to sign such a contract."   There was nothing in the contract under question which gave to the defendant corporation the right to make any such demand; and, although the evidence above quoted was denied, no explanation was given by the defendant as to why it had refused to accept Roberts' milk.   As to the assignor Perry, it was testified on the trial, as a part of the defendant's case, that Perry had only signed the agreement in question ten or twelve days before the dividend was declared.   That he had brought milk sometime prior thereto to the defendant's station,

did not bring him within the terms of the contract. He was not bound by it before he signed it, and the counterclaim as to him, too, must be disallowed, no penalty having accrued.

The plaintiff will, therefore, have judgment for the amount claimed, with costs.